All right. Good morning. Our second case today is UFT Commercial v. Fisher. I see Ms. Dunkley and Ms. Strickler. Can you hear me? Yes. Yes, Your Honor. All right. Ms. Dunkley, you may proceed. Good morning. May it please the Court, I represent the appellates, UFT Commercial Finance, LLC, and Joanne Marlow. This appeal arises out of the dismissal of a claim of legal malpractice. There are two key issues on appeal, whether appellants have pled duty as to Ms. Marlow and whether they have sufficiently alleged proximate cause. Central to both issues is the negligent advice of Mr. Fisher relating to the deferral of compensation of UFT employees, including the agreement he drafted related to his own compensation and the subsequent ruling in the employment arbitration that this violated the Illinois Wage Protection and Collection Act. This advice by Mr. Fisher was wrongful, and I will first address this in the context of the second issue on appeal, proximate cause. The district court ruled that, pursuant to the case of metric, that we are required to plead that if the risk had been known as to the wrongful advice concerning the deferral of compensation and the deferred compensation agreement, we would not have consented to them. However, metric goes on to provide that if the course of action the attorney recommends is in itself improper, that is not the case, meaning that we are not required to plead that we would not have followed it. So, Ms. Junkley, how clear does it have to be that it's improper? This, of course, went to arbitration, and the arbitrator eventually decides that, but not everything that is decided adversely means that ex ante, you knew that you were suggesting something that was not going to comply with the law. So what's the threshold? Well, Your Honor, metric provided in that case that, and that was concerning a bankruptcy, and the advice there was that it was, the advice was not given as to changing from a bankruptcy to Chapter 7, and that the only reasonable inference that could be taken is from the facts, is that if the clients had have known that the requirements between Chapter 7 and Chapter 11 bankruptcy, that there is no way they wouldn't have said, yes, let's go to Chapter 7 these huge statutory penalties, two percent per month, statutory penalties at the time of the arbitration, it was $314,000 worth of statutory penalties. There is no way, no reasonable inference that they would possibly have taken that course of action. Well, but of course that assumes the statutory violation. I'm just trying to put myself in the ex ante position. Once the statute's come along, but if there is, I mean, what does it have to be? Just clear ex ante that the statute's been violated, that he just willfully sat down and drafted a deferred compensation agreement that failed the requirements of Illinois law, or reasonably debatable, or what? What's the standard? I'd say the requirement is that he needs to have informed the client of the risks associated with the potential paths forward. And as is played here, the client was completely unaware of the existence of those risks to make their business decision as to how they wanted to move forward on this. I thought the, how clear is it that the arbitrator found a violation here? I thought the deferred compensation agreement was simply recognizing an existing obligation, identified one potential category of sources for payment. But to the extent the wage payment statute comes into play, it had already been violated. Your Honor, we say that the violation is clear concerning the clause, and this is recited at the appendix 75. And this is recited in the arbitration that the deferred compensation agreement also contained the following provision, that the amount, which for Mr. Fisher was the $330,000 in compensation, shall be paid in full from any subsequent first closing of any permanent equity debt placement by UFT commercial in an if not paid earlier. And then the arbitrator found that that specific provision, and this is at 80 of the appendix, that provision was an added condition, a limitation on his right to timely receive payment of the earned wages guaranteed to him under the act. Given the robust Illinois public policy in favor of making payments due to workers, such restrictions and limitations are expressly prohibited. And I quote the act. First of all, I don't understand how that's a limitation in the agreement. It's a commitment, not that unusual in startups to say, okay, if we get fresh capital, I've got dibs on that. But I don't see any commitment by the company or by Mr. Fisher in that with that provision, say that that's the only way he can be paid. No, Your Honor, but the advice and the understanding of the client here is that they did not have to pay him until that time, until such time as there was this infusion. How do you figure that? If it's an existing obligation? Well, you certainly are on it, but the damages here that flow from it are, we're not arguing that the $330,000 in compensation disappears. We're arguing here that the client's understanding and the advice they received is that they could defer payment of that amount without penalty, without a risk, that they could defer that until such time as there was this capital infusion. That's how the district court recited the facts as well. They found, and this is at 193 to 194 in the appendix, that under the supplemental agreements, which is the deferred compensation agreements, employees agreed to be paid their accrued wages in the future when certain specified profit goals were met. That was the understanding of the client. The allegation is, as pled, that they were not told of any of the risks of following that piece of advice, specifically the statutory penalties that come into play on violating the act. I would say that the case of Lopez is instructive in relation to this in that it was found there that the duty of an attorney encompasses protecting a client from self-inflicted harm. It was the case that, as at the time, the funds or the compensation to Mr Fisher accrued, he should have been paid that under the act. But the client was given advice that they could not take. In Lopez, the incorrect advice was concerning statute of limitations on a wrongful death claim. They were told it was two years, and instead it was one year. The court held that the incorrect advice regarding the statute of limitations would undermine the client's sense of urgency and likely have more dire consequences than no advice at all. Here, it is a similar situation. Had the client been aware of the risk of these statutory penalties for a violation of the act, they may have—or I would say the only reasonable inference that can be drawn from the facts is that they would have looked for a way to solve this problem instead of sitting on it with the belief, based on advice they received from counsel, that they could defer it without knowing that they would incur these huge draconian penalties. So I wonder if we could turn for a minute to who is the client, because it certainly seems to me that at first cut, Mr Fisher was providing legal services for the company, not for the person we're calling Marlo. I don't know why. But anyhow, explain to me why she is the client. Yes, Your Honor. So we argue this on two bases, an alternative basis. The first is that she was, in fact, the client as it relates to the transaction, which we say the transaction is the advice and the drafting of agreements around deferred compensation. But is that true for all companies? I mean, are corporate lawyers automatically personal lawyers for directors, officers, firm leadership? No, Your Honor, but the rules do contemplate that it is possible to have a dual representation between the company and, say, its key shareholder or a chief executive officer. And we would say that it's only in certain specific circumstances where that occurs. And that occurs where the lawyer fails to manifest a lack of consent and knows or should reasonably know that the person reasonably relies on the lawyer to provide those services. But when she was dealing with Mr Fisher, she was dealing with him in her capacity as an officer of the company. I don't see where the clarity is that anybody sees that private attorney-client relationship has arisen. Your Honor, if we think about it this way, if the advice was wrongful, which we allege it was, what recourse would Ms Marlowe otherwise have here in relation to this wrongful advice? She is the one who has suffered the detriment, the liability as a result of the wrongful advice because she is found to be an employer for the purposes of the Illinois Wage Payment and so she should also, by contrast, if that advice had have been correct, it would have been protecting her against such liability. But you're implying then the only possible relationship is attorney-client? It's a kind of a backwards way to reason yourself into an attorney-client relationship. She was interested at one point in director and officer insurance, which indicates to me that she knew somehow that maybe she had a different scope of exposure than the company as a whole. Why do we say that she can look to Fisher as her personal attorney? Because he should have known that she was relying on his advice. He should reasonably have known that she was relying on his advice in this context because and again, this context is specifically related just to these wage claims and just around this deferred compensation because she is going to be someone who is personally liable and was it's similar and also relevant to this is the case of Freedom Mortgage because that shows and that concerned real estate transactions where an attorney was hired by a company who wasn't Freedom to perform title searches in relation to the real estate transactions and subsequently Freedom successfully sued the attorney or at least it got past an appeal as having a duty to Freedom because it was found that that attorney was the only attorney on the transaction and as the only attorney on the transaction it's reasonable that the parties on that transaction he had a duty to them and the allegation was that Freedom justifiably relied on the attorney with regard to that specific real estate transaction and as a result suffered damages. Here what we're saying is that Ms. Marlowe relied on the advice along with the company as to the transaction being the deferral of compensation and that advice was wrongful. As a result, she is found to be personally liable. He was the only attorney on that transaction. He did not advise her to seek independent legal advice or anything of that nature and as a result she relied on the advice that he provided to her detriment being an amount of $314,000 plus legal fees. Can I ask you just an elementary question here? If I'm in charge of let's say manufacturing, I'm the plant foreman and we're manufacturing medical devices and some of them that we produce are defective and the company winds up injuring patients and incurring liability as a result. Can the company sue me personally? Take my house because I was negligent in running the factory? Well, the company or an individual within the... I see what you're saying, Your Honour. I've never seen a case like this in which an in-house counsel is being sued for negligence. Your Honour, I don't have a case specifically on that issue but I will say and I can see I'm running out of time here. I will just quickly say that there are cases where it's the statute makes people beneficiaries such as the wrongful death cases like the Lopez case. We would say here that there's statutory liability here for the individual and as such she should have had benefit of the advice so as to not be liable. I'm going to say if your case were against an outside lawyer, I would understand it better than I do against someone who is an employee of the company. Yes, Your Honour and again the allegation is not as to the entire relationship. He was hired as the chief legal officer of the company. It is just specific to this transaction. I mean that doesn't really... I don't see how that actually helps but we may need to study a little further so thank you. Thank you, Your Honour. All right, thank you very much. Ms. Strickler. Thank you, Chief Judge Sykes. May I please the court? My name is Nicole Strickler and I represent Mr. Richard Fisher. Mr. Fisher is a licensed attorney. He's been in practice for over 50 years and was described as the arbitrator in the prior proceedings as an experienced and highly credentialed corporate attorney. What this case really boils down to is a retaliatory action by a disgruntled former employee or employer, excuse me, UFT and its chief executive officer who were held liable for the failure to pay Mr. Fisher over a million dollars in accrued wages over a significant period of time where Mr. Fisher worked for the company. Has the award been paid yet, Ms. Strickler? I'm sorry, Your Honour? Has the award been paid? No, Your Honour, it has not. I believe we've collected approximately $800 and I'm actually the attorney that's also involved in the collection action so I can state that effectively. The district court properly dismissed this action on a motion to dismiss for failure to state a claim in accordance with our 12b6 motion to dismiss and while there were several claims that were brought up in the district court from the appellant's brief, there were only two issues raised on their brief and appeal. The first is that they claim that they've adequately pled Marlowe as an individual client and the second is relative to the proximate cause issue as to the purported deferred compensation agreement. Now I use the term deferred compensation agreement but if you read the arbitrator's order and you know the actual documented issue which is in the record and attached, it does nothing to defer compensation nor was that the intent of the parties which we argued in our brief. I'd like to move to the first point as to the duty to Ms. Marlowe individually. If you recognize in the complaint itself, the complaint is clear in the beginning paragraphs that Mr. Fisher was the sole source of legal counsel and Marlowe as to the operations of the company. Nowhere in the complaint is there any indication that Mr. Fisher actually had was engaged by Ms. Marlowe in any type of personal way or any claims that would have been in a personal nature and if you also look at the employment agreement which I in this case and which was also attached to their complaint, it's very clear as the capacity in in which Mr. Fisher was engaged to provide legal counsel. The employment agreement makes clear that not only that he was working for the company but also specifically disclaims any representation as to affiliates meaning the agreement between the parties which ultimately governed you know only representing the company. Right I think the argument Ms. Strickler is not that there's a duty generally but there's a duty specific to this transaction so perhaps you could focus the argument on that. And as for the transaction your honor I suppose there's there's really two two different I see two different transactions so to speak. First there's the initial employment agreement between Mr. Fisher and the company which Judge Kiporis ruled we couldn't consider anyway because it was barred by the statute of repose because it was created October 1st 2013 which has not been challenged. And then there's this idea of the supplemental agreement relative to Mr. Fisher and I think if you read the arbitrator's order which again is in the record and we attach the complaint is referred to in the complaint which can be properly considered by the court it shows that this was not intended by either party to be any sort of amendment to the original employment agreement by the parties. It was basically a confirmation of the amount that had been accruing this entire time and as Judge Hamilton recognized this is not an odd scenario that for a compensated employee to desire the compensation from such large cash infusion in a startup scenario. So I think when you look at the actual if you want to look at the transaction of this supplemental agreement so to speak the supplemental agreement itself there's nothing in that Mr. Fisher had some type of individual duty to Ms. Marlowe relative to just confirming compensation that was already owed to him under the original employment agreement. Right well and I understand the arbitrator's ruling and correct me if I'm wrong it's that he construed the arbitrator construed the contract to create a contractual claim against a certain source of payment for the accrued unpaid wages to the extent that those accrued unpaid wages weren't otherwise paid from some other source and the agreement went no further than that and if it did go further than that it would have been unlawful but it didn't go further than that so it was not an unlawful agreement. Exactly your honor so I think if you read the arbitrator's ruling as a whole the arbitrator's ruling basically what occurred is we have a scenario here where Mr. Fisher filed on the basis of his employment agreement for all those accrued wages the Ms. Marlowe and UFT raised the supplemental statement of the amount owed and said oh no no this is a scenario where he's agreed that we didn't have to pay him until certain sources well not only did the the arbitrator rule that didn't happen but and that it would have been ineffective but that wasn't the intent of the parties anyway nor could they have done that under the law anyway the source of the liability from the arbitration agreement I'm sorry from the arbitration proceeding is the fact that Mr. Fisher was not paid for years after signing that original agreement and those statutory penalties began to occur from that point in time now I don't think it should come as shock to anyone you know a company or Ms. Marlowe with you know the level of experience she leaves about herself in her own complaint that you know that in Illinois you have to pay your employees and there are consequences for not paying your employees like this is not a new scenario where you know attorney corporate attorneys you know working in-house counsel have to somehow advise their own the companies they work for that it's a requirement to pay your employees I mean that whole concept to me just is completely ridiculous but to turn back to the to the point there's nothing in this complaint that would give a plausible inference that Ms. Marlowe was represented in any sort of individual capacity by Mr. Fisher and for that reason you know the district court was correct now so could what you're calling the supplemental agreement I'm looking at the arbitrator's decision too if all it does is just confirm what had already been done by the initial employment agreement I take it your position is that there sort of wasn't a second and separate transaction that might have triggered an attorney-client relationship that this notion that there was at least a specific relationship can't get off the ground because because nothing had really happened other than confirmation of the old agreement yes judge would and I think that's clear from even what the arbitrator found after several days of hearings in the beginning of the arbitrator's award as he goes through the history this was not a scenario where they were trying to renegotiate their agreement this was my client a brand new deferred compensation agreement in your view in the arbitration not at all the arbitrator says nothing in the document suggests it was to be an amendment so I guess that's it right and if you look at page 11 judge would I mean I think it's even clear in his final sentence basically his only conclusion in reference to this deferred compensation agreement and I say that in quotes because it didn't know such thing is that it wasn't an obstacle to his right to recover damages under the act that was the sole basis by which the the arbitrator was considering this agreement was at all because they brought it up so I think if you look at that as a whole this is not a scenario where she can claim she had any type of supplemental attorney-client belief also I think if you look at Pelham that case Pelham versus Gricehammer you know it's clear that the primary purpose and intent must be to benefit and influence this third party in order to get some a non-client to have some sort of ability to assert a claim and that's just not present here it's clear from the complaint it's clear from the documents attached to the complaint but this is not a scenario where Mr. Fisher's primary purpose was to influence Ms. Marlowe but you know they do sign a different piece of paper whatever we want to call that piece of paper and you know there are some duty to say you know before you start signing things since you may personally be on the hook you should get your own lawyer well your honor I think that you know in regard to this particular you have to look at the capacity in which they were acting and I think in the capacity in which they were acting which was as the CEO that of the company which is the company that had the doesn't matter because in this scenario this didn't increase the amount of liability that she ultimately suffered or the company suffered because they were already in violation of the act there's nothing that they could have done at this point that would have eliminated their violation of the act that occurred back in 2014 when they stopped paying so I mean it's really neither here nor there when it comes down to it if you think about the proximate cause on the proximate cause point I do think it's important because I just to mention with the remainder of my time that I don't believe this metric case alters any type of pleading requirement that that must be pled when it comes to the proximate cause and I say that because the metric facts were so specific as the chapter 11 chapter 7 dichotomy it was obvious in that particular scenario that that they would have had to they should have basically not pursued this chapter 11 this is not the case here and it's not the case because the liability was already incurred nothing increased it it just never was paid so if the whole idea here is that they would not have entered into this confirmation of the wages owed whatever you want to call it supplemental agreement whatever else you know that's fine but they needed to have to have pleaded that and they didn't and I don't think they can because I don't know what it would have really changed about the results of the arbitrator's order it it it just it didn't cause the liability the liability was set so with all this in consideration I don't believe the district court erred in its decision to dismiss the matter and in that they didn't seek leave to replete or make any of those arguments you know they we can't we're not in a scenario where this should be remanded for leave to replete because you know under James Peake's sons they never took the proper procedural avenues to make that happen so we would ask that the district court or that the district court's order be affirmed and the judgment maintain the it is all right thank you very much um miss dunkley your time had expired but you may have an additional minute if you have some rebuttal thoughts uh yes just very briefly thank you your honor um there was no finding uh in the arbitration that it was not the intent of the parties to defer compensation there was a finding that it was not intended to amend the employment agreements and to that extent we're not arguing the three hundred and thirty thousand dollars as arguing the statutory penalties because metric provides that it is the duty of every attorney to inform a client of the available options for alternative legal solutions as well as explain the foreseeable risks and benefits of each the purpose is to allow the client to make an informed decision here the client was not told of the risks of entering into this agreement or the risk of not paying immediately and as such they accrued these huge statutory penalties on an ongoing basis what were their other options take out a loan enter into a settle a deed of settlement potentially any reason to think that they would have been able to do that if they hadn't been able to pay their employees for years well your honor as is pled they were not advised your honor there's no allegation in the complaint that they were insolvent they did have paid there were cash flow issues but there's no allegation they were insolvent and the allegation is that they were told that this was a way forward this was a path forward and so they followed that path without being told that the risks are this is a violation of the illinois wage payment and collection act and as such you face statutory penalties of two percent per month thank you thank you all right thank you very much and our thanks to both counsel the case will be taken